UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANCINE DAYTON A/K/A/ FRANCINE
BOLT O/B/O R.D.,

                              Plaintiff,

        v.                                                3:11-cv-859

MICHAEL J. ASTRUE, COMMISIONER
OF SOCIAL SECURITY,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## <u>DECISION and ORDER</u>

        Plaintiff Francine Dayton commenced the instant action on behalf of her minor child appealing the determination of the Commissioner of Social Security that the minor child was not disabled within the meaning of the Social Security Act.

## I.        FACTS

        Plaintiff was born on May 12, 1995.  Plaintiff never engaged in any substantial gainful employment activities.  She alleges disability due to attention deficit hyperactivity disorder and a bipolar condition.

        Plaintiff was hospitalized for psychiatric conditions at Binghamton General Hospital on January 16, 2001 at the age of five and a half (5 ½ ) years old.  In the history of present illness, it was noted that the 5 ½ year old girl was initially referred for tantrums, fearfulness, problems sleeping, and school refusal.  It was noted that the stressor was a dog bite to the face requiring multiple surgical procedures to repair.  It was also noted that the Plaintiff was

undergoing private counseling and working with a counselor at school.  She was also getting

speech evaluations at school.  The Plaintiff was already taking Paxil.  It was noted that she

continued to exhibit impulsivity, defiance and irritability.  She was diagnosed with

posttraumatic stress disorder, anxiety, and attention deficit hyperactivity disorder (hereinafter

"ADHD").

Plaintiff has been treated on an out-patient basis by Andrea Reale.  Reale

performed a core evaluation on February 12, 2001.  She related the Plaintiff's history of

post-traumatic stress disorder  (hereinafter "PTSD") following a dog bite to the face by a pit

bull in 1999 and Plaintiff's taking Paxil.  Reale continued to see Plaintiff and the progress

notes are contained in the administrative record.  By February 10, 2004, Plaintiff's diagnoses

included anxiety and ADHD.  The medication Ritalin and Zoloft were added to her regiment.

It was noted on April 23, 2004 that Plaintiff was still having tantrums and that she got quite

irritable throughout the afternoon.  Plaintiff's mother related during that time frame that

Plaintiff was insubordinate and was hard to deal with in the evening.  Additionally, the night

prior, the Plaintiff had been banging her head against the wall in response to being told she

could not have a snack at that time.

On May 20, 2004, Plaintiff was again brought in by her mother and stepfather.  It

was related that the Plaintiff was exhibiting escalating behaviors and that her temper

tantrums were escalating in length and severity.  These temper tantrums would lead to

kicking, screaming and breaking things.  Plaintiff has also been followed by her family

physician, Dr. Michelle Boyle.  On October 10, 2003, Dr. Boyle notes the history of behavioral

problems and recommended the prescriptions for Zoloft and Buspar.

Plaintiff was also evaluated by her school psychologist, Robyn L. Wood, M.A., C.A.S., in the Susquehanna Valley School District.  Wood issued a confidential psychological evaluation report in February of 2004.  The dates of evaluation were February 4, 2004, February 5, 2004, February 6, 2004, February 17, 2004 and February  19, 2004.  The evaluation procedures included teacher input, review of records, a behavioral assessment system for children report, a Wechsler Intelligence Scale for Children, the Wechsler Individual Achievement Test, and the Beery-Buktenica Developmental Test of Visual Motor Integration.  Wood noted Plaintiff's history involving problems in pre-school with separating from parents and excessive crying when she is upset.  Wood also noted the history of ongoing treatment at the Binghamton Psychiatric Center at an Adolescent Unit in Binghamton with the overseeing care of Dr. Diana Weiner.  Additionally, Plaintiff had been diagnosed with anxiety and depression and been working with a therapist, Reale, since 1999. Also, the significant physical history was noted of Plaintiff being bitten by a bit pull on her face and receiving 70 sutures in 1999 with subsequent surgeries.  Plaintiff was noted to frequently break down crying in class when she feels someone is upset with her and did not get her own way in class.

Wood recommended that the Committee on Special Education meet to develop a plan to meet Plaintiff's educational and emotional needs, develop a 504 Accommodation Plan to support her needs, and receive academic support from a consultant teacher within her classroom.  Further recommendations were made that a behavioral plan should be developed to be carried out over multiple settings.  Recommendations also included receiving program modifications such as preferential seating near where the instruction is taking place, non-verbal cue by the teacher to bring Plaintiff back on task, and smaller group

settings to minimize distractions and extended time frame to complete tasks.  It was also noted that Plaintiff may benefit from a written daily schedule on her desk to eliminate any increased anxiety due to the unknown order of events.

Plaintiff was examined by John Cusick, a consulting pediatric physcian on July 7, 2004.  Cusick noted Plaintiff's prior dog bite, diagnoses of anxiety, depression, post-traumatic stress disorder as well as multiple medications.  He also noted Plaintiff's behavioral problems and 504 accommodations plan in school.

Mary Ann Moore, a psychologist, evaluated Plaintiff July 8, 2004.  Moore diagnosed Plaintiff with attention deficit hyper activity disorder, an anxiety disorder, a dysthymic disorder, a learning disorder, and a possible auditory processing disorder.  On July 20, 2004, Plaintiff's records were reviewed by Karen Prowda.  She prepared a childhood disability evaluation form and diagnosed Plaintiff with attention deficit hyper activity disorder, a learning disorder, asthma and a severe mood disorder.

Plaintiff's psychiatrist completed an assessment on August 18, 2005.  She diagnosed Plaintiff with anxiety and ADHD.  Plaintiff moved to South Carolina with her mother and step-father in 2006.  Plaintiff received treatment through the Waccamaw Center for Mental Health between June 29, 2006 and March 29, 2008.  Records from the Waccamaw Center for Mental Health noted Plaintiff's difficulties of distractibility, emotional outbursts, screaming, pulling hair, pounding her head against the wall, having mood swings, being sad, agitated, and arguing with peers, bickering with friends and arguing with her parents.  Plaintiff was noted to be angry and irritable and her effect was stress, exaggerated and explosive.

Plaintiff underwent a psychological evaluation with the Horry County School Systems on March 20, 2007.  Among other things, suicidal idealation was noted.  Records from the school, the testimony from the mother, and the evaluations reflect that Plaintiff's behavior continued to remain severe.  The South Carolina school took multiple disciplinary actions against Plaintiff between 2006 and 2008, with the last being on October 14, 2008.

With a protective filing date of May 11, 2004, the child's mother filed an application for Supplemental Security Income payments alleging disability beginning on January 1, 2004.  The claim was initially denied on July 21, 2004.  The mother requested a hearing that was held in September 2005.  After the hearing, the ALJ issued an unfavorable decision.  A subsequent request for review was denied by the Appeals Council.  Plaintiff commenced an action in this Court.  The parties entered into a Consent Order whereby the matter was remanded to the Commissioner for further administrative proceedings.

A hearing was held before another ALJ.  On December 2008, the ALJ issued an unfavorable decision.  A request for review was filed with the Appeals Council, which declined to assert jurisdiction and conduct a review.  Plaintiff, thus, filed another action in this Court.  The parties once again entered into a Consent Order remanding the matter for further administrative proceedings.  Plaintiff declined the opportunity for a supplemental hearing and, instead, opted to rely on the administrative record.

In a decision dated January 27, 2011, the Administrative Law Judge ("ALJ") found that the minor child is defined as a school age child who has never engaged in any substantial gainful activity at any relevant time to this decision.  The ALJ found Plaintiff to have severe impairments including attention deficit hyper activity disorder and a mood disorder, but specifically excluded bipolar disorder and asthma as severe impairments.  With

respect to the findings of functional domains as an equivalent to the listing, the ALJ found that Plaintiff only had a marked limitation in one functional domain - interacting and relating to others, but only up until February of 2008.  Accordingly, the ALJ found that the minor was not disabled within the meaning of the Social Security Act.

Plaintiff commenced the instant action challenging the Commissioner's determination that the minor child does not have a marked limitation in two or more functional domains.

## II.     STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also, Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine de novo whether a Plaintiff is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L. Ed. 126 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1 982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  However, although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be "liberally applied;" its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

**III.    DISCUSSION**

To be disabled within the meaning of the Social Security Act, a child must have an impairment or combination of impairments that are severe and that either medically or functionally equal the severity of an impairment listed in appendix 1 to subpart P of part 404 of Chapter 3 of Title 20 of the Code of Federal Regulations. 20 C.F.R. § 416.924(c), (d).  For an impairment or combination of impairments to be the functional equivalent of a listed impairment, the child must show a "marked" impairment in two functional areas or an "extreme" limitation in one area. 20 C.F.R. § 416.926a(a).  The relevant areas are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

An impairment is marked when it:

interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R.  § 416.926a(e)(2)(i).

### a.  <u>Acquiring and Using Information</u>

The domain of acquiring and using information pertains to how well the child acquires or learned information and how well she uses the information that she has learned. 20 C.F.R. § 416.92a(g).  Plaintiff claims that the ALJ erred in finding that the child has a less than marked limitation in acquiring and using information.  Plaintiff argues that the Commission only looked to the report of Dr. Prowda, the Commissioner's records review physician; Dr. Moore, the one time psychological consultant; and the child's third grade teacher.  Plaintiff further claims that the fact that the child repeated the seventh grade alone is sufficient evidence of the child's difficulty in acquiring and using information.  Lastly, Plaintiff contends that, although the child's Individual Education Plan indicates that she is placed in a regular classroom 80% of the time, it was with an aide and resource room help.

The Court finds that the ALJ did not err with respect to this domain.  The objective testing (including IQ and achievement testing) indicated that Plaintiff scored in the average to low-average range on standardized testing, which is above that required to constitute a marked limitation.  20 C.F.R. § 416.926a(e)(2).  Moreover, the child's third grade teacher reported that the child did have problems in math and word problems and that her psychiatric issues might be interfering with her school success, but that her reading, writing, and math skills were at grade level.  Progress reports for the fourth quarter of 2006 and the first quarter

of 2007 demonstrated acceptable academic progress.  The child did suffer a set back in the

seventh grade, having failed four subjects, which required her to repeat that grade.  While

this may, in some circumstances, be suggestive of a marked limitation in acquiring and using

information, the Court finds that, upon consideration of the totality of the evidence, the ALJ

did not err in concluding that this evidence was insufficient to establish a marked disability.

The evidence supporting this conclusion includes the facts that the child never repeated any

other grades (before or after the seventh grade), the child did not have an Individualized

Education Plan after the seventh grade, one year prior to the seventh grade the child was

found to be progressing academically at an acceptable pace, the child remained in the

regular classroom (albeit with some assistance), and treating psychiatrist Susan Redge, M.D.

noted that the child would graduate high school "at same age as if she had not been held

back a year."  The Court, therefore, finds that the ALJ's conclusion in this regard applied the

proper legal standard and was supported by substantial evidence.

### b.   Attending and Completing Tasks

The domain of attending and completing tasks pertains to how well the child is able

to focus and maintain attention and how well she begins, carries through, and finishes

activities, including the pace at which she performs activities and the ease with which she

changes them.  20 C.F.R. § 416.92(a)(h).  Plaintiff contends that the ALJ erred in finding a

less than marked limitation in attending and completing tasks.  In support, Plaintiff points to

reports from South Carolina in 2007 detailing Plaintiff's disruptive behavior and the child's

difficulty in remembering to shower and bathing herself once in the shower.  Plaintiff further

claims that the ALJ improperly discounted the testimony of the child's mother in this regard.

The record supports a conclusion that the child had some limitations in attending and completing tasks. The child was diagnosed with ADHD and there are several instances in the record of attention-related issues. While the child does suffer from such limitations, the Court finds that there is substantial evidence supporting the conclusion that the limitations are not marked. There is an absence of medical or school records substantiating a serious limitation. Moreover, the record suggests that the child's use of ADHD medications "helped attention greatly." Although there is a record of disruptive behavior, Plaintiff points to nothing linking that behavior to attending and completing tasks. Further, there is a lack of evidence concerning a high frequency of such inappropriate behavior that it is affecting the child's ability to attend and complete tasks. Lastly, there was ample basis for not granting substantial weight to the testimony of Plaintiff in light of the lack of other evidence (e.g. medical records, school records, etc.) corroborating her claims.

      c.    **Interacting and Relating with Others**

The domain of interacting and relating to others entails consideration of how well the child initiates and sustains emotional connections with others, develops and uses the language of her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Plaintiff disputes the Commissioner's determination that the child had a marked limitation in interacting and relating with others only until February 2008. In support of her argument, Plaintiff contends that there is no evidence that Plaintiff's behavior problems improved since February 2008, the child was involved in two physical alterations at school (April 2007 and October 2008), and the child has disciplinary reports for instances of truancy, profanity, inappropriate riding on a bus, disrespectfulness, and refusal to obey.

The Court finds that the ALJ properly considered the relevant evidence on this issue (including the instances of physical alterations and single instances of truancy, profanity, inappropriate writing on a bus seat, disrespect, and refusal to obey detention) and reasonably concluded that, considering the totality of these instances in light of the overall time frame involved, that there was insufficient severity to find the child to be marked in the domain of interacting and relating with others.  While the child unquestionably exhibited inappropriate behavioral issues, particularly in the home, the records generally reflect that the child was improving and doing relatively well.  There is insufficient evidence after February 2008 of tantrums or other inappropriate behavior.  To the contrary, in February 2008, the child was noted to be getting along better with her mother, to be friendlier and more positive.  Further, during the relevant periods of time, the child was rated to have a Global Assessment of Functioning ("GAF") between 60 and 65, which is indicative of mild to moderate symptoms.

### d.    **Manipulating and Moving Objects**

Plaintiff does not dispute the finding that the child has a less than marked limitation in manipulating and moving objects and, therefore, the Court will not address this domain.

### e.    **Caring for Herself**

The domain of caring for oneself pertains to how well the child maintains a healthy emotional and physical state, including how well she gets her physical and emotional wants and needs met in appropriate ways; how she copes with stress and changes in her environment; and whether she takes care of her own health, possessions, and living area. 29 C.F.R. § 416.926a(k).  Plaintiff contends that the ALJ erred in finding a less than marked limitation in this domain.  In support, Plaintiff notes that the record indicates instances of poor

hygiene, it is age-inappropriate for a teenager to forget to bathe herself on a regular basis, and the ALJ improperly discounted the testimony of the mother in this regard.

The Court again finds that there is substantial evidence supporting the ALJ's conclusion that, although the child has a limitation in her ability to care for herself, it is less than marked.  As Plaintiff contends, there is mention in the record of instances of poor hygiene.  However, there also are many more instances of reports of good hygiene. Moreover, Plaintiff concedes that there is no record evidence to support the claim that the child forgets to bathe herself on a regular basis and the subjective allegations without supporting documentation (e.g. medical records, school records, etc.) in this regard are insufficient to establish a marked limitation in this domain.

### f.      Health and Physical Well-Being

The last domain, health and physical well-being, entails consideration of  the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's functioning that was not considered in the evaluation of her ability to move about and manipulate objects. 29 C.F.R. § 416.926a(l).  Plaintiff contends that the ALJ erred in failing to find a marked limitation in this domain.  In support, Plaintiff argues that Plaintiff has been on a series of medications since a young age.

The Court finds that the ALJ's decision is supported by substantial evidence.  The record evidence supports the finding that, although the child takes many medications, there are no documented side effects and the medications have controlled the child's asthma. Plaintiff does not point to any record evidence demonstrating that the child's medications have had negative physical effects.

## IV.      CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's determination and dismisses this matter.  The Clerk of the Court shall close the file in this case.

IT IS SO ORDERED.

Dated: October 3, 2012

Thomas J. McAvoy
Senior, U.S. District Judge